UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

ROBERT L. BUSHNELL, Individually )
and d/b/a QUALITY COLLISION )
AND TOWING, )
    *Plaintiff,* )
)    No. 4:08-cv-81
v. )
)    Judge Mattice
BEDFORD COUNTY, TENNESSEE, )
a political subdivision of the State of )
Tennessee; CITY OF SHELBYVILLE, a )
a political subdivision of the State of )
Tennessee; SHELBYVILLE POLICE )
DEPARTMENT; and RAY BROWN, )
Individually, and d/b/a RAY'S PAINT )
AND BODY SHOP, and d/b/a )
BEECHES BODY SHOP, )
    *Defendants.* )

## MEMORANDUM AND ORDER

Plaintiff Robert L. Bushnell brings this action against Defendants Bedford County,

Tennessee ("County"), the City of Shelbyville ("City"), the Shelbyville Police Department

("Police Department"), and Ray Brown ("Brown"), individually and doing business as Ray's

Paint and Body Shop ("Ray's") and Beeches Body Shop ("Beeches"), alleging violations

of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), state tort law,

42 U.S.C. § 1983, the Sherman Antitrust Act, and the Freedom of Information Act. All of

Plaintiff's claims are based on the alleged failure of Defendants to follow ordinances

governing the rotation of wrecker services in Shelbyville, Tennessee, and Plaintiff alleges

misconduct and collusion amongst those charged with adhering to the ordinance.

Before the Court is Defendant Brown's Motion for Summary Judgment [Court Doc.

19]. For the reasons set forth below, Defendant Brown's Motion for Summary Judgment

will be **GRANTED**.

## I. STANDARD OF REVIEW

The Court notes that there is conflict between the title of this Motion, purporting to seek summary judgment, and the actual content of the Motion, which seeks dismissal of all of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted. In fact, Defendant provides the standard of review for both such procedural rules. Complicating the situation further, Defendant did not provide additional evidentiary materials, such as deposition testimony or affidavits, to support his Motion for Summary Judgment. Instead, the record before the Court consists almost solely of the pleadings. Such a limited review of the pleadings would be more appropriate in the context of a Motion to Dismiss pursuant to 12(b)(6), which would generally be filed in lieu of an Answer.

Defendant filed his Answer on December 29, 2008, however, and waited until July 27, 2009, to file this Motion. While the 12(b)(6) defense is not waived by failure to assert it in a responsive pleading, the Court has affidavits and other materials before it that make a summary judgment motion more appropriate. Pursuant to Federal Rule of Civil Procedure 12(d), a 12(b)(6) motion can be converted to a motion for summary judgment when the Court reviews documents outside of the pleadings. Because this is styled as a summary judgment motion and the Court has material outside the pleadings to consider, the Court will apply the summary judgment standard to this motion.

Summary judgment is proper where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material

fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material facts exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may bear this burden by either producing evidence that demonstrates the absence of a genuine issue of material fact, or by simply " 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325. To refute such a showing, the nonmoving party may not simply rest on its pleadings. *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996); *see Anderson*, 477 U.S. at 249. The nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Celotex*, 477 U.S. at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. Such a determination requires that

the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Anderson*, 477 U.S. at 254. Thus, if the plaintiff must ultimately prove his case at trial by a preponderance of the evidence, the Court must, on motion for summary judgment, determine whether a jury could reasonably find by a preponderance of the evidence that the plaintiff's factual contentions are true. *See id.* If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II.    FACTS

Plaintiff Robert Bushnell filed his Complaint against all Defendants on October 30, 2008. (Court Doc. 1, Compl.) The Complaint sets forth several Tennessee statutes that the Defendants have allegedly violated and asserts causes of action under RICO, 18 U.S.C. §§ 1962-1964, tortious interference with prospective business advantage, the Sherman Antitrust Act, 15 U.S.C. §§ 1-2, 42 U.S.C. § 1983, and the Freedom of Information Act, 5 U.S.C. § 552. (Compl. ¶ III.) As the factual basis for these claims, Plaintiff asserts that he owns one of the 11 wrecker and towing businesses in Shelbyville, Tennessee. (*Id.* ¶ II.A.) Plaintiff's business depends on receiving wrecker calls and towing assignments from the City and County governments. (*Id.*) Over the past 35 years, however, the City and County governments, along with the Shelbyville Police Department,

-4-

have allegedly funneled a large portion of the wrecker and towing business to one business, an entity that was formerly known as Beeches Body Shop and owned by J.C. Beech. (*Id.*) Plaintiff states that this business is now known as Ray's Paint and Body Shop and is owned by Defendant Brown, who is a relative of J.C. Beech and worked as a manager at Beeches Body Shop. (*Id.*) Plaintiff contends that this practice of funneling work to Beeches, and now Ray's, was due to an arrangement between Mr. Beech and the government, and was in violation of the informal rotation schedule by which the wrecker and towing businesses received calls.[1] (*Id.*)

Plaintiff claims that some of the records documenting such misconduct have been altered to conceal this arrangement and the blatant favoritism towards this one business. Plaintiff lists several detailed examples of incidents in which the City and Police Department did not comply with the rotation schedule, where repairs to vehicles were never documented, where Beeches was selected for repairs even when other shops provided lower estimates, or where payments were made to Beeches without proper documentation. (*Id.*) Plaintiff contends that the following Tennessee statutes have been violated: Tennessee Code Annotated § 5-14-108 (requiring competitive bids on county purchases); Tennessee Code Annotated § 39-16-402 (proscribing official misconduct by public servants); Tennessee Code Annotated § 39-16-403 (proscribing official oppression by public servants); and Tennessee Code Annotated § 47-50-109 (prohibiting procurement of breach of contract). (*Id.* ¶ B.)

Apparently based on the alleged violations of these statutes, some of which are

---

[1] A formal rotation schedule ordinance was apparently implemented in 2008. (Court Doc. 28 pp. 11-13.)

criminal in nature, Plaintiff asserts claims under the federal RICO statute and alleges that the Defendants collectively comprise an enterprise engaged in unlawful racketeering activity. (*Id.* ¶ III.A.) Plaintiff also asserts that Defendants have tortiously interfered with Plaintiff's prospective business advantage, have violated the Sherman Antitrust Act set forth in 15 U.S.C. §§ 1-2 by engaging in unlawful activity in contravention of fair competition, and have violated Plaintiff's constitutional rights in violation of 42 U.S.C. § 1983 by depriving him of certain property rights protected by the rotation schedule. (*Id.* ¶¶ III.B-D.) Finally, Plaintiff claims that Defendants violated the Freedom of Information Act by failing to provide Plaintiff with requested documentation concerning the wrecker rotation schedule and payment for repairs to City and Police Department vehicles. (*Id.* ¶ III.E.)

Defendant Brown, sued individually and doing business as Ray's and Beeches, filed a Motion for Summary Judgment on July 27, 2009. (Court Doc. 19, Def.'s Mot. for Summ. J.) Defendant Brown contends that he is entitled to judgment as a matter of law because there are no specific claims against him and no actionable conduct by him alleged in the Complaint. (*Id.* ¶ 1.) Defendant Brown states in his Memorandum that he could not have taken part in a 35-year conspiracy because he is only 37 years old, that he is not a relative of J.C. Beech, and that Ray's is not a successor to Beeches. (Court Doc. 20, Def.'s Mem. in Supp. of Mot. for Summ. J. ¶¶ 1-2.) Defendant Brown made the same statements in an affidavit filed contemporaneously with his Answer. (Court Doc. 9, Brown Aff. ¶¶ 2-7.) Defendant Brown also asserts that J.C. Beech died on January 12, 2008 and Beeches is no longer in business, but the Beech estate is not a party to the lawsuit. (Def.'s Mem. at 1.)

III.    **ANALYSIS**

Section II.B of Plaintiff's Complaint contains citations and quotations from four Tennessee statutes which Plaintiff alleges "proscribe the Defendants' conduct." (Compl. ¶ II.B.) Plaintiff is not proceeding under the theory that violations of these statutes constitute his causes of action, however, because he asserts five separate claims under Section III, titled "Plaintiff's Causes of Action." (*Id.* ¶ III.) Accordingly, the Court will review these five claims separately and will consider that the statutes referenced may relate to certain causes of action.

A.    **RICO Claim**

Plaintiff first asserts a claim under RICO, the Racketeer Influenced and Corrupt Organizations Act. (*Id.* ¶ III.A.) Plaintiff claims that the Defendants are an "enterprise" for RICO purposes, and that they have engaged in a pattern of racketeering activity for their own benefit and to the detriment of interstate commerce. (*Id.*) Plaintiff alleges that Defendants received income from this unlawful racketeering activity and caused financial injury to both the State of Tennessee and Plaintiff. (*Id.*) Plaintiff further asserts that personal jurisdiction is proper over Defendant Brown pursuant to 18 U.S.C. § 1965(b) and (d). (*Id.*) Defendant Brown asserts that Plaintiff does not allege this cause of action with any specificity and that Plaintiff has presented no evidence as to Defendant Brown's involvement in a conspiracy or the violation of any predicate offenses. (Def.'s Mem. at 7.)

The Court initially finds that 18 U.S.C. § 1965(b) and (d) concern venue and process and do not offer any substantive grounds for asserting a RICO claim against Defendant Brown. To address the merits of this claim, there are four essential elements that Plaintiff

-7-

must allege.  A plaintiff must plead "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (citation omitted).  To establish a pattern of racketeering activity, Plaintiff must point to at least two "predicate acts" of racketeering activity that occurred within a ten-year period.  Plaintiff must also show that this activity constitutes a pattern of both related and continuous racketeering behavior.  *Id.* at 723-24.  The threshold inquiry in a RICO claim, therefore, is to determine the offenses that constitute racketeering activity.

"Racketeering activity" is defined in 18 U.S.C. § 1961(1), and the statute sets forth a large number of other statutes that qualify as predicate offenses.  *Id.*  None of the federal statutes Plaintiff asserts (i.e., the Sherman Antitrust Act, 42 U.S.C. § 1983, and the Freedom of Information Act) appear on the list of possible racketeering activity statutes, so the Court will assume that Plaintiff alleged predicate offenses based on violations of state law–namely, the Tennessee statutes Plaintiff references in his Complaint.

Plaintiff asserts that Defendants violated four Tennessee statutes.  The definition of racketeering activity includes:

> [A]ny act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act), which is chargeable under State law and punishable by imprisonment for more than one year.

18 U.S.C. § 1961(1)(A).  Two of the statutes Plaintiff cites, Tennessee Code Annotated §§ 5-14-108 and 47-50-109, are not criminal statutes, and therefore are not "chargeable under State law and punishable by imprisonment for more than one year."  This language limits any predicate act under state law to felony violations.  The other two statutes Plaintiff

asserts are criminal statutes proscribing official misconduct and official oppression. *See* Tenn. Code Ann. §§ 39-16-402 to 403. While both statutes are classified as Class E felonies under Tennessee law, the Court finds that neither statute outlines actions that would qualify as racketeering activity under the statutory definition. Tennessee Code Annotated § 39-16-402 states, in relevant part:

> (a) A public servant commits an offense who, with intent to obtain a benefit or to harm another, intentionally or knowingly:
>
> > (1) Commits an act relating to the servant's office or employment that constitutes an unauthorized exercise of official power;
> >
> > . . .
> >
> > (3) Refrains from performing a duty that is imposed by law or that is clearly inherent in the nature of the public servant's office or employment;
> >
> > (4) Violates a law relating to the public servant's office or employment.

*Id.* Tennessee Code Annotated § 39-16-403 reads:

> (a) A public servant acting under color of office or employment commits an offense who:
>
> > . . .
> >
> > (2) Intentionally denies or impedes another in the exercise or enjoyment of any right, privilege, power or immunity, when the public servant knows the conduct is unlawful.

*Id.* These are the specific sections of each statute quoted in Plaintiff's Complaint, but neither statute will suffice to meet the definition of racketeering activity necessary to support a RICO claim. The latter statute clearly does not give rise to any act of murder, kidnapping, gambling, arson, robbery, bribery, extortion, or dealing in obscene material or

-9-

drugs. As for the first statute, the only possible act that it might support from the definition of racketeering activity is bribery, but this official misconduct statute does not appear to contemplate the offense of bribery. The statute focuses on the scope of the public servant's position and power and addresses actions in excess of that power as well as neglect of the public servant's duties. There is no language other than a vague reference to "obtaining a benefit" that would lead the Court to accept that the statute proscribes bribery, especially in light of the multiple other Tennessee criminal statutes which address that offense. *See* Tenn. Code Ann. § 39-16-101 *et seq.*

The Court therefore finds that the acts outlined in each Tennessee statute asserted do not fit the definition of "racketeering activity" as set forth in 18 U.S.C. § 1961(1), and that Plaintiff has failed to allege the necessary predicate offenses to support his RICO claim. Without a predicate offense, there can be no racketeering activity; without racketeering activity, there can be no pattern of racketeering activity; thus, there can be no RICO claim. Therefore, Plaintiff's RICO claims as to Defendant Brown must fail. Accordingly, Defendant Brown's Motion for Summary Judgment is **GRANTED** as to Plaintiff's RICO claims against him, and such claims are **DISMISSED WITH PREJUDICE**.

### B. Tortious Interference with Prospective Business Advantage Claim

Plaintiff next asserts a claim under the state law tort of tortious interference with prospective business advantage. In his Complaint, Plaintiff alleges that his application to be on the wrecker rotation schedule constitutes a valid contract and business relationship, and the action of Defendants adversely affected that relationship. (Compl. ¶ III.B.) Plaintiff contends that his company and others were denied business in favor of "Defendant

-10-

Beeches and its successor, Ray's" and that "Defendant Beeches conspired with the Defendants to provide reduced or free services which should have otherwise been submitted to public bid." (*Id.*) Defendant Brown claims that there is insufficient information in the Complaint to support this claim because Plaintiff did not offer any specific conduct engaged in by Defendant Brown and did not sufficiently set forth the alleged conspiracy. (Def.'s Mem. at 6.)

The Tennessee Supreme Court officially recognized the tort of tortious interference with prospective business advantage in *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691 (Tenn. 2002). To succeed on such a claim, a plaintiff must establish the following elements:

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's *improper motive or improper means*, and finally, (5) damages resulting from the tortious interference.

*Id.* at 701 (citation omitted) (emphasis in original). The Court must assume that Plaintiff is relying on a theory that Ray's is a successor entity to Beeches because Plaintiff has not alleged any facts regarding Defendant Brown's personal knowledge about the relationship, his intent to interfere with the relationship, or his improper motive.

Successor is defined as "[a] corporation that, through amalgamation, consolidation, or other assumption of interests, is vested with the rights and duties of an earlier corporation." BLACK'S LAW DICTIONARY 1473 (8th ed. 2004). There are no facts pled which comport with such a definition; instead, Plaintiff asserts that Ray's is a successor to

Beeches because Defendant Brown was the manager at Beeches for many years before Mr. Beech died, Defendant Brown is a relative of Mr. Beech, Defendant Brown operates his business in the same location and with the same telephone number as Beeches, and Defendant Brown participated in the alleged violations for years as the manager of Beeches.  (Court Doc. 27, Pl.'s Resp. at 2; Court Doc. 28, Bushnell Aff. ¶ 3; Court Doc. 29, Pl.'s Mem. at 8.)  Defendant Brown has submitted an affidavit which states that he worked at Beeches for over 20 years but was only an employee.  (Brown Aff. ¶¶ 4-5.)  Defendant Brown acknowledges that he purchased a wrecker and frame-straightening machine from the Beech heirs, but states that Ray's is not a successor to Beeches, he is not a relative of Mr. Beech, and he does not possess any of the business records of Beeches.  (*Id.* ¶¶ 6-8.)

The Court cannot determine, from these limited facts, the true relationship between Beeches and Ray's.  Nor is it possible for the Court to determine what involvement Defendant Brown has, if any, in the long-standing arrangement that Plaintiff alleges in his Complaint.  Most of the statements in Plaintiff's Complaint and affidavit concern activities of Beeches and J.C. Beech and conclusory claims that Ray's is a successor to Beeches.  There are no facts about Defendant Brown's involvement with these alleged activities, only statements that this arrangement has continued to benefit Defendant Brown.  (Bushnell Aff. ¶¶ 3-8.)

Reaching the conclusion that Defendant Brown was involved in this alleged arrangement requires the Court to make many assumptions that it is unable and unwilling to make.  The Court cannot attempt to fill in the facts to create an issue of fact where Plaintiff has failed to do so, and the Court cannot accept that this dispute–whether Ray's

-12-

is a successor to Beeches–rises to the level of a genuine issue of material fact simply because there are no facts from which to determine the relationship exists. Plaintiff has failed to provide facts regarding successor liability or independent conduct of Defendant Brown, and the Court cannot reward Plaintiff for a factually insufficient Complaint and Response by allowing claims to survive summary judgment solely on that basis.

The standard for summary judgment clearly states that "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must–by affidavits or as otherwise provided in this rule–set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Plaintiff has not provided any specific facts to establish an issue for trial and has instead relied on his already factually deficient pleadings. Therefore, Defendant Brown's Motion for Summary Judgment is **GRANTED** and Plaintiff's claim for tortious interference with prospective business advantage against Defendant Brown is **DISMISSED WITH PREJUDICE**.

### C. Sherman Antitrust Act Claims

Plaintiff's Complaint next states that Defendants acted individually and collectively to engage in direct and conspiratorial conduct that violated the Sherman Antitrust Act, 15 U.S.C. §§ 1-2. (Compl. ¶ III.C.) Plaintiff asserts that Defendants monopolized the wrecker and towing business in Shelbyville, Tennessee and exercised their power in anti-competitive and exclusionary means, in violation of the requirements for fair competition. (*Id.*) Defendant Brown asserts that the Complaint states no facts about the alleged conspiracy, who was involved, or how the Defendants acted to restrain competition, and that there is no suggestion that Defendant Brown had any part in this conduct, if it existed.

-13-

(Def.'s Mem. at 9.)

Section 1 of the Sherman Antitrust Act reads that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. The elements of a section 1 claim are "1) a contract, combination, or conspiracy; 2) affecting interstate commerce; 3) which imposes an 'unreasonable' restraint of trade." *White & White, Inc. v. Am. Hosp. Supply Corp.*, 723 F.2d 495, 504 (6th Cir. 1983).

Section 2 states that "[e]very person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony." 15 U.S.C. § 2. To establish a section 2 claim, the plaintiff must prove "(1) the possession of monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *United States v. Grinnell Corp.*, 384 U.S. 563, 570-71 (1966). Monopoly power is defined as "'the power to control price or exclude competition.'" *Id.* (citation omitted).

Conspicuously absent from Plaintiff's pleadings are any facts to establish the crucial elements of each claim; in addition, there are no facts alleged regarding Defendant Brown's involvement in activities that might substantiate these claims. Simply put, because Plaintiff has not sufficiently established Defendant Brown's participation in the alleged monopoly and conspiracy in contravention of fair competition, Plaintiff has not met his burden of establishing that there is a genuine issue of material fact regarding Defendant Brown's potential liability under these claims. Plaintiff had the opportunity to set out

-14-

specific allegations as to Defendant Brown in his Complaint, and when Defendant Brown asserted that there were no valid Sherman Act claims against him in the Motion for Summary Judgment, Plaintiff had another opportunity to point to any such facts in his Response to support these claims against this Defendant.

Neither document, however, sets forth sufficient facts to allow the Court to infer that Defendant Brown can be liable for violations of the Sherman Act. The Court would have to make giant factual leaps about the existence of the alleged activities, the participation of Beeches in those activities, the participation of Defendant Brown in those activities, and the potential for successor liability–all in order to reach the conclusion that there is an issue on these claims that can only be properly adjudicated at trial. Although the Court is permitted to draw inferences in favor of the nonmoving party, the Court will not make broad assumptions about Plaintiff's claims in an attempt to create an issue of fact on these claims as to this Defendant. Plaintiff has simply failed to meet his burden of establishing a genuine issue of material fact; instead, Defendant Brown has successfully met his burden of showing the Court that Plaintiff has produced no evidence to support these claims. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Accordingly, Defendant Brown's Motion for Summary Judgment in regards to Plaintiff's Sherman Act claims is **GRANTED** and these claims are **DISMISSED WITH PREJUDICE**.

### D. Section 1983 Claim

Plaintiff states in his Complaint that "the Defendants, City of Shelbyville and Bedford County, acted under color of state law . . . [t]hrough individual acts of City and County

officers, authorized by an established custom and practice, purposefully followed by the Defendant governmental entities, Plaintiff's rights protected by 42 U.S.C.S. § 1983 were violated." (Compl. ¶ III.D.) Based on this language, the Court finds that Plaintiff asserts a claim under 42 U.S.C. § 1983 only against Defendants City and County. (*Id.*) Although Defendant Brown responded to this claim in his Motion for Summary Judgment, an analysis of the validity of a § 1983 claim against Defendant Brown seems unnecessary and unwarranted, as no such claim appears to have been made. Accordingly, Defendant Brown's Motion for Summary Judgment as to any such claim is **GRANTED**, and any § 1983 claim against Defendant Brown is **DISMISSED WITH PREJUDICE**.

### E. Freedom of Information Act Claim

Plaintiff asserts his final claim under the Freedom of Information Act, 5 U.S.C. § 552, and states in his Complaint that he has experienced problems receiving documents from "City officials." (*Id.* ¶ III.E.) Plaintiff references all Defendants except for Defendant Brown in asserting this cause of action. (*Id.*) The Court assumes from the context of this claim, and the detailed facts in a different section of the Complaint, that Plaintiff has attempted to procure documents relating to the wrecker rotation schedule and payment for vehicle repair from Defendants City, County, and Police Department. (*Id.* ¶ II.A.2-17.)

The Court has reviewed the applicable statute, 5 U.S.C. § 552, and cannot conceive of any way in which Defendant Brown could be liable for a violation of this Act. Plaintiff has not specifically alleged any violation of this Act by Defendant Brown, and Plaintiff has not alleged any facts to support a contention that Defendant Brown would have any control over the procedures for maintaining and releasing records of the City, County, or Police

Department.  This Defendant cannot be liable for violations of the Freedom of Information Act in regards to the records requested in this action.  Accordingly, Defendant Brown's Motion for Summary Judgment as to this claim is **GRANTED** and any such claims against Defendant Brown are **DISMISSED WITH PREJUDICE**.

## IV.     CONCLUSION

For the reasons set forth above, Defendant Brown's Motion for Summary Judgment [Court Doc. 19] is **GRANTED** in its entirety, and all claims against Defendant Ray Brown, individually and doing business as Ray's Paint and Body Shop and Beeches Body Shop, are **DISMISSED WITH PREJUDICE**.

**SO ORDERED** this 22nd  day of March, 2010.

_____*/s/Harry S. Mattice, Jr.*_____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE

-17-