NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0514n.06

No. 10-5464

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | |
|---|---|
| ROBERT L. BUSHNELL, Individually, dba Quality Collision and Towing, <br><br> Plaintiff-Appellant, <br><br> v. <br><br> BEDFORD COUNTY, a political subdivision of the State of Tennessee, <br><br> Defendant, <br><br> and <br><br> CITY OF SHELBYVILLE, a municipality and political subdivision of the State of Tennessee; SHELBYVILLE POLICE DEPARTMENT, <br><br> Defendants-Amici Curiae, <br><br> RAY BROWN, dba Ray's Paint and Body Shop, dba Beeches Body Shop, <br><br> Defendant-Appellee. | FILED <br> **Jul 22, 2011** <br> LEONARD GREEN, Clerk <br><br><br> ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |

Before: SUTTON and WHITE, Circuit Judges; STAFFORD, District Judge.*

SUTTON, Circuit Judge.  Robert Bushnell asks us to review the trial court's grant of summary judgment to the defendant, Ray Brown, on Bushnell's claims under the Racketeer

---

*The Honorable William H. Stafford, Jr., Senior United States District Judge for the Northern District of Florida, sitting by designation.

No. 10-5464
*Bushnell v. Bedford County*

Influenced and Corrupt Organizations Act (RICO), the Sherman Antitrust Act and state tort law. Because Bushnell has produced insufficient evidence to permit a reasonable jury to hold Brown liable on any of these claims, we affirm.

I.

At the heart of this dispute is the process by which police dispatchers in the city of Shelbyville and Bedford County, Tennessee refer work to towing, wrecking and auto-body shops. Dispatchers play a central role in the process, as distressed motorists often patronize the shop of the towing company the dispatcher sends to an accident scene. To promote fair competition, Shelbyville has barred towing companies from showing up unsolicited at accident scenes and has established a "rotation schedule," designed to distribute customers impartially. R.28 Ex. 1.

Bushnell has been in the towing and auto-body business for more than twelve years. One of his longtime business rivals was Beeches Body Shop, a sole proprietorship owned by J.C. Beech and managed for several years by Brown. In April 2008, after Beech's death, Brown opened his own business, Ray's Paint and Body Shop.

Concerned about the way Shelbyville police dispatchers implemented the rotation schedule, Bushnell filed a complaint in federal district court in October 2008. He sued Bedford County, the City of Shelbyville, the Shelbyville Police Department and Brown. Bushnell claimed violations of RICO, Tennessee tort law, the Sherman Antitrust Act, 42 U.S.C. § 1983 and the Freedom of Information Act. He accused the defendants of participating in a quid pro quo arrangement, by

- 2 -

No. 10-5464
*Bushnell v. Bedford County*

which city and county dispatchers would steer a disproportionate number of customers to Beeches in exchange for discounted repair work on city and county vehicles. The complaint identified a number of instances in which dispatchers steered business to Beeches or arranged for Beeches to repair city vehicles, as well as one instance in which dispatchers steered business to Ray's.

Brown moved for summary judgment on all of the claims against him. In response, Bushnell filed an affidavit that largely tracks the allegations made in his complaint. The district court granted Brown's motion for summary judgment, and two months later the parties agreed to dismiss the City of Shelbyville, the Shelbyville Police Department and Bedford County from the case without prejudice. Bushnell appealed the district court's summary-judgment ruling in favor of Brown.

II.

Of the five claims he raised in the district court, Bushnell continues to pursue three on appeal: He contends that Brown violated RICO and the Sherman Act, and tortiously interfered with a prospective business advantage under Tennessee law. The issue on appeal is whether, after viewing the evidence in the light most favorable to Bushnell, a reasonable jury could hold Brown liable on any of the three claims. *See* Fed. R. Civ. P. 56. It could not.

*RICO.* Bushnell argues that the alleged quid pro quo arrangement violated RICO, which in relevant part says:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to

- 3 -

No. 10-5464
*Bushnell v. Bedford County*

>conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c); *see also Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). The statute defines racketeering activity to include "any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical . . . which is chargeable under State law and punishable by imprisonment for more than one year." 18 U.S.C. § 1961(1)(A).

Bushnell identifies four Tennessee statutes as candidates for RICO predicate offenses. Two of them, Tenn. Code Ann. §§ 5-14-108 and 47-50-109, are not criminal statutes and thus cannot constitute RICO predicate offenses. *See* 18 U.S.C. § 1961(1)(A). A third law, Tenn. Code Ann. § 39-16-403, is a criminal statute prohibiting public officials from intentionally violating a citizen's rights, but it cannot be a RICO predicate offense because the law has nothing to do with any of the types of criminal activity outlined in § 1961(1).

That leaves the fourth law, Tenn. Code Ann. § 39-16-402, which prohibits public servants from knowingly violating a law in connection with their official duties with the "intent to obtain a benefit or to harm another." Unlike the other three, this one might be a RICO predicate. It is a criminal law. And the crime may be akin to bribery, a type of criminal activity listed in § 1961(1). *See United States v. Garner*, 837 F.2d 1404, 1418 (7th Cir. 1987) ("[A]ny statute that proscribes conduct which could be generically defined as bribery can be the basis for a predicate act."). We need not resolve the point today, however, because this theory of RICO liability falls short for an

- 4 -

No. 10-5464
*Bushnell v. Bedford County*

independent reason. Even if violations of § 39-16-402 could be RICO predicate offenses, Bushnell fails to raise a genuine issue of material fact over whether Brown engaged in a "pattern of racketeering activity." A pattern requires at least two RICO predicate acts. *Sedima*, 473 U.S. at 496 n.14; *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 236–37 (1989). Yet, on this record, there is at most evidence that Brown committed one RICO predicate offense: that a police officer improperly steered a customer to Ray's Body Shop on May 18, 2008. All of the other allegations in Bushnell's affidavit concern Beeches Body Shop, not Ray's, and Bushnell concedes that "Brown cannot be held accountable for the violations committed by his former employer . . . Mr. Beech." Bushnell Br. at 11. The district court properly rejected the RICO claim against Brown as a matter of law.

*Sherman Act*. Bushnell adds that Brown's conduct violated the Sherman Antitrust Act. Although his brief fails to invoke any one provision of the Sherman Act, his claim most naturally arises under section 1, as it involves no discussion of market power or monopolization. Section 1 outlaws "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations." 15 U.S.C. § 1. Because Bushnell does not allege the kind of anticompetitive practice that amounts to a *per se* violation of the Sherman Act, such as price fixing or an output limitation, the rule of reason applies. *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 885–86 (2007). That requires us to consider "all of the circumstances of a case" to determine "whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition." *Cont'l T.V., Inc. v. GTE Sylvania, Inc.*, 433 U.S. 36, 49 (1977).

No. 10-5464
*Bushnell v. Bedford County*

A dearth of facts also undoes this claim. The record lacks any indication that Brown caused an anticompetitive impact in the market for towing, wrecking or auto-body services in the relevant geographic market, whether defined as Shelbyville, Bedford County or Middle Tennessee. Bushnell's affidavit asserts a few facts that, if true, would be relevant to a rule-of-reason analysis: that there are "approximately seven" towing companies in Shelbyville, two auto-body shops and two more auto-body shops that have recently closed "due to financial problems," R.28 at ¶ 1, and that all such companies "depend greatly upon business which [they] received from calls to accident scenes" by local law enforcement officers, *id.* at ¶ 2. But there is no evidence about the impact of the quid pro quo scheme, let alone the small part of it attributed to Brown, on market conditions. Whether in the form of market studies, business records, even affidavits from owners of auto-body shops claiming that their financial difficulties stemmed in part from a decline in dispatcher referrals, such evidence might bolster a Sherman Act rule-of-reason claim. In the absence of such evidence, however, no reasonable jury could find Brown liable.

*Tortious Interference with a Prospective Business Advantage.* To establish this claim under Tennessee law, a plaintiff must show:

> (1) an existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons; (2) the defendant's knowledge of that relationship and not a mere awareness of the plaintiff's business dealings with others in general; (3) the defendant's intent to cause the breach or termination of the business relationship; (4) the defendant's improper motive or improper means; and finally, (5) damages resulting from the tortious interference.

No. 10-5464
*Bushnell v. Bedford County*

*Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 701 (Tenn. 2002) (emphasis and footnotes omitted). This claim, too, founders on a shortage of evidence. Bushnell's affidavit, the only relevant evidence before us, contains just two allegations about Brown. It says that Brown has continued the "very profitable" quid pro quo arrangement initiated by Beeches. R.28 at ¶ 3. And it says that on May 18, 2008, a police officer improperly steered a motorist to Ray's Paint and Body Shop, even though it was not the next company on the rotation schedule and the motorist did not request Ray's. It would require considerable imagination and speculation—far more than we permit juries to use to grant relief—to infer from these two allegations that Brown improperly deprived Bushnell of any business opportunity. The allegations say nothing about Brown's knowledge of Bushnell's business, about his intent to interfere with it or about whether the improper referral even affected Bushnell's business. To withstand a motion for summary judgment, a party "must set forth specific facts showing that there is a genuine issue for trial," and the evidence must be "significantly probative," not just "merely colorable." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986). Even if Bushnell's more elaborate allegations against Beeches and the city and county suffice to clear this bar, that would not change things as to Brown, as Bushnell disclaims that Brown's business can be held liable as a successor entity to Beeches. On this record, no reasonable Tennessee jury could hold Brown liable for tortious interference.

III.

For these reasons, we affirm.

- 7 -